OPINION OF THE COURT
Per Curiam.
Judgment of conviction, rendered January 22, 2009, reversed, on the law, accusatory instrument dismissed and fine, if paid, remitted.
Evidence at trial showed that, in the early morning hours of March 7, 2008, defendant was observed lying “outstretched” on a flat piece of cardboard covered by a blanket and sheets, and that defendant had in his possession a backpack that he used as a makeshift pillow. Based upon this conduct, defendant was arrested and convicted of violating section 16-122 of the Administrative Code of the City of New York, headed “Vehicles and other movable property,” subdivision (b) of which makes it unlawful
“for any person, such person’s agent or employee to leave, or to suffer or permit to be left, any box, barrel, bale of merchandise or other movable property whether or not owned by such person, upon any marginal or public street or any public place, or to erect or cause to be erected thereon any shed, building or other obstruction.”
Even when viewed in the light most favorable to the People, the evidence was legally insufficient to sustain the verdict. We note initially that the People expressly disavow reliance on the first of the prohibitions set forth in section 16-122 (b), i.e., “leav[ing], or . . . permitting] to be left, any box [etc.],” and instead seek to impose criminal liability solely under the second prohibitory clause of the ordinance, forbidding a person to “erect [in any public place] . . . any shed, building or other obstruction.” However, the People’s proof failed to establish that defendant, in lying atop a flat piece of cardboard and covering himself with a blanket and sheets, erected an obstruction within the “plain, natural meaning” (People v Ditta, 52 NY2d 657, 660 [1981]) of the highlighted term, viz., to have “put up [as a building or machine] by the fitting together of materials or parts” or to have “fix[ed] in an upright position” (Webster’s Third New International Dictionary 770 [2002]). Manifestly, *19 nothing was put up, fitted together or fixed upright in connection with the defendant’s impromptu bedding, and we may not, under the guise of judicial interpretation, read out of existence the legislatively chosen term “erect” to dispense with such proof.
Nor was it shown that the cardboard-based “bedding” said to have been erected by defendant was the type of “obstruction” proscribed by the ordinance (cf. Betancourt v Bloomberg, 448 F3d 547, 553 [2d Cir 2006] [a 42 USC § 1983 civil rights action arising from the plaintiff’s arrest under Administrative Code § 16-122 (b) for “constructing]” an “agglomeration of boxes” into a tube or “structure that was sufficiently large for a man to crawl into”]).* Under the maxim of ejusdem generis, we must construe the ordinance’s catch-all phrase “other obstruction” in light of the specific items — sheds and buildings — that the ordinance expressly prohibits from being erected in the City’s public places. We are not prepared to equate defendant’s loosely formed bedding, whose foundation consisted of a single, flat piece of cardboard, with such structural obstructions as sheds or buildings, or, for that matter, the multi-box tube assembled by the plaintiff in Betancourt and found by the majority of the Second Circuit panel in that case to constitute a structure. Nor does it avail the People to argue on appeal that defendant’s “bed” consisted of “at least two” pieces of cardboard. Not only does the People’s characterization of the evidence in this regard lack firm record support, but they are bound by the allegations set forth in the accusatory instrument and the representations made in the trial assistant’s opening and summation statements, all indicating that but a single piece of cardboard was involved. In any event, under no reasonable analysis can the mere stacking of several flat, loose pieces of cardboard be held sufficient to trigger criminal liability under Administrative Code § 16-122 (b).
Contrary to the People’s apparent contention, the mere presence of defendant’s recumbent body on top of “a collection of inanimate objects” cannot be said to have created — or, more accurately, to have erected — an obstruction within the meaning of the ordinance. Adoption of such an expansive theory would lead to absurd results, potentially criminalizing any number of innocuous activities, with sunbathing on a blanket in a City park *20 most readily coming to mind. We decline to construe the ordinance so broadly, and this regardless of the propriety of what the arresting police officer described as the City’s initiative to “assist homeless [persons] with shelter.”
Under parallel reasoning, the underlying information — which merely alleged that defendant was “lying outstretched on top of a cardboard on a public sidewalk . . . blocking] the flow of pedestrian traffic” — failed to set forth a prima facie case that defendant violated Administrative Code § 16-122 (b).
In light of our determination, we need not address defendant’s constitutional arguments.
Shulman, J.E, Schoenfeld and Torres, JJ., concur.

 It bears mention that no prosecution ensued following the arrest of the plaintiff in Betancourt, based upon the District Attorney’s determination therein that the case “lack[ed] prosecutorial merit.”